380 A.2d 482

**Nicholas STATHAS and Isabell Stathas, Appellants,**

v.

**George Newton WADE ESTATE by Anna Ruth Wade, Cumberland County National Bank & Trust Co., Executors of the Estate of George Newton Wade.**

Superior Court of Pennsylvania.

Argued Sept. 17, 1976.

Decided Dec. 2, 1977.

Henry F. Coyne, Camp Hill, for appellants.

Mark E. Garber, Jr., Carlisle, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This appeal involves a claim for damages based on a rear-end collision near the Harvey Taylor Bridge in Harrisburg, on May 1, 1973. Appellants were injured when a car driven by George N. Wade struck their car from behind as they were waiting in a line of traffic. Wade died some months later of unrelated causes and his estate was made defendant in the action.

At the trial, which was before a judge sitting without a jury, appellants established Wade's negligence, but because of various evidentiary rulings, which will be explored here, they did not get full damages for their injuries; hence this appeal.

1

Appellants argue that it was error for the trial judge to strike their testimony about damages, specifically, about: days of sick leave, loss of earnings, salary, expenditures for drugs, and a bill for medical treatment of Isabell Stathas. This testimony was prohibited as violating the Dead Man's Act, Act of May 23, 1887, P.L. 158, § 5(e), 28 P.S. § 322, which provides:

> Nor, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed . . . to a party on the record who represents his interest . . ., shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse . . ., be a competent witness to any matter occurring before the death of said party . . . .

In construing a statute we must consider the legislature's purpose in enacting it. Act of May 28, 1937, P.L. 1019, Art. IV, § 51, 46 P.S. § 551; *Clearview Bowling Center, Inc. v. Borough of Hanover*, 430 Pa. 579, 244 A.2d 20 (1968); *Commonwealth ex rel. Jones v. Jones*, 216 Pa.Super. 1, 260 A.2d 809 (1969). The purpose of the Dead Man's Act is "to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give

testimony thereon favorable to himself and adverse to the decedent, which the latter's representative would be in no position to refute." *Weaver v. Welsh,* 325 Pa. 571, 577, 191 A. 3, 7 (1937). Dead Man's legislation is common, and other courts have spoken to the same effect. For example: "The temptation to falsehood and concealment in such cases is considered too great to allow the surviving party to testify in his own behalf. Any other view of this subject, I think, would place in great peril the estates of the dead. . . ." *Owens v. Owens,* 14 W.Va. 88, 95 (1878). *See generally* 2 Wigmore on Evidence § 578 (3d ed. 1940).

The admission of appellants' testimony on damages would not have been inconsistent with the purpose of the Dead Man's Act. Wade's estate was in no worse a position to refute the testimony than Wade himself would have been. As the Supreme Court of Nevada noted in a similar case: "[T]he appellant's testimony as to her medical bills, her pain and suffering and matters of like nature which the decedent could not have contradicted of his own knowledge, was clearly admissible and the rejection of such testimony was prejudicial error." *Zeigler v. Moore,* 75 Nev. 91, 335 P.2d 425, 430 (1959).

In *Hepler v. Atts,* 201 Pa.Super. 236, 192 A.2d 138, 142 (1963), this court held that the plaintiff, seeking relief because he had been sold 25 fewer acres than he had bargained for, was competent to testify against the estate of the deceased seller about the value of the property during the lifetime of the seller:

> He may now testify as to such matters as *do not fall under the category of occurrences.* He is no longer disqualified from testifying to the value of property during the lifetime of the decedent, even if that property was the subject of a transaction between them.

201 Pa.Super. at 243, 191 A.2d at 142 (emphasis supplied). We see no persuasive distinction between *Hepler* and the present case. We therefore hold explicitly what *Hepler* has already held implicitly, that the phrase in the Dead Man's Act, "any matter occurring before the death of the other

party", does not apply to testimony pertaining to the extent of damages, when that testimony is unrelated to the issue of negligence, and is such that the decedent's representative is as capable of refuting it as the decedent himself would have been.

## 2

Appellants next argue that the trial judge erred in refusing to admit Mrs. Stathas's hospital bill on the ground that there was not sufficient evidence that the hospitalization was made necessary by the injury she suffered in the accident.

One of the issues at trial was to what extent, if any, Mrs. Stathas's apparently pre-existing emotional problem was aggravated by the accident. Two of appellants' expert witnesses testified that Mrs. Stathas's emotional problem was aggravated by the accident; another of their experts testified that when he treated her she had no symptoms in any way connected to the accident. A fourth witness, Dr. Smeltzer, testified at one point on direct examination that there was a connection, N.T. 98–99, but on redirect he testified: "I think that stress can precipitate an emotional breakdown. But, in this situation, I believe that the emotional problem existed before and I believe *that it's possible* that the stress of this accident created an emotional breakdown in her." N.T. at 120 (emphasis added).

■ In a personal injury case where there is no obvious causal connection between the accident and the injury, unequivocal medical testimony is necessary to establish the causal connection. *Smith v. German*, 434 Pa. 47, 253 A.2d 107 (1969); *Florig v. Sears, Roebuck & Co.*, 388 Pa. 419, 130 A.2d 445 (1957). In this case the trial judge, applying this principle, found that appellants had not sustained their burden of proving a causal connection between the accident and the emotional breakdown that Mrs. Stathas subsequently suffered.

■ On review of a judgment in a case tried without a jury, we must regard the trial judge's findings in the light of the evidence most favorable to them, setting all conflict-

ing evidence aside. *Blue Anchor Overall Co. v. Pa. Lumber-mens Mut. Ins. Co.*, 385 Pa. 394, 123 A.2d 413 (1956). When we do this we must conclude that the trial judge had an adequate basis for his finding that there was no causal connection between the accident and Mrs. Stathas's hospitalization: Dr. Smeltzer was the admitting doctor. The judge might well have believed, and evidently did believe, that Dr. Smeltzer knew more about Mrs. Stathas's condition than any of the other witnesses. Dr. Smeltzer's testimony that a causal connection was "possible" was insufficient to establish the connection.

3

■ We shall remand this case for a new trial limited to the issue of damages, with appellants being permitted to offer such testimony on damages as may be consistent with the foregoing discussion. It is appropriate to limit a new trial to the issue of damages where the issue of liability has been fairly determined, and the issue of damages is readily separable. *Troncatti v. Smereczniak*, 428 Pa. 7, 235 A.2d 345 (1967). Here appellee presented no evidence to refute liability, and did not appeal the judgment of liability. The issue of liability has therefore been fairly determined. It is, moreover, readily separable from the issue of damages, as may be seen from the course of the trial, where the evidence on liability was presented before, and distinct from, the evidence on damages.

■ Appellants request that we allow their new trial to be before a jury. We shall not, however. Appellants inadvertently failed to make a timely request for a jury trial. When the trial judge nonetheless refused to grant them a jury trial, they proceeded to a nonjury trial without noting an objection to the judge's decision. They thereby waived their right to a jury trial now. *Downs v. Scott*, 201 Pa.Super. 278, 191 A.2d 908 (1963).

Reversed and remanded for a new trial consistent with this opinion.

PRICE and VAN der VOORT, JJ., concur in the result.